**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

Norma Saldana Tista and
Zenaida Garcia Saldana,

    Plaintiffs,

v.                                                                        Civ. No. 21-cv-0479 MIS/JFR

Ur Mendoza Jaddou,[1] D*irector of*
*the United States Citizenship and*
*Immigration Service (USCIS)*,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant's Motion to Dismiss and Memorandum in Support, filed on July 14, 2021. ECF No. 9. Plaintiffs responded on July 28, 2021. ECF No. 13. Defendant replied on August 11, 2021. ECF No. 15. Having considered the parties' submissions, the record, and the relevant law, the Court will grant the Motion in part and deny it in part.

## **BACKGROUND**

In an effort to encourage noncitizens to report violent crimes to law enforcement, Congress created a path to legal status for noncitizens who have been victims of certain crimes and who assist law enforcement in prosecuting the perpetrator. ECF No. 1 at 4, ¶ 12. The path to status is through a "U visa." 8 U.S.C. § 1101(a)(15)(U). Congress

---

[1] On August 3, 2021, Ur Mendoza Jaddou was appointed as the director of USCIS and is substituted for Tracy Renaud. *See* Fed. R. Civ. P. 25(d).

capped the number of U visas per fiscal year at 10,000, which has led to an enormous backlog. 8 U.S.C. § 1184(p)(2)(A); ECF No. 1 at 4–6.

To address the backlog, regulations require the agency tasked with adjudicating U visa petitions, the United States Citizenship and Immigration Services (USCIS), to create a waitlist. 8 C.F.R. § 214.14(d)(2). The regulation provides that "[a]ll eligible petitioners who, due solely to the cap, are not granted [a U visa] *must* be placed on a waiting list and receive written notice of such placement." *Id.* (emphasis added). The regulation goes on to discuss the priority of petitions once on the waitlist and concludes with: "USCIS *will* grant deferred action or parole to [U visa petitioners and qualifying family members while they] are on the waiting list. USCIS, in its discretion, may authorize employment for such petitioners and qualifying family members." *Id.* (emphasis added). Thus, the waitlist, in effect, provides a layer of protection against prosecution for immigration violations while petitioners await official U visas.

Plaintiffs applied for U visas on February 21, 2017. ECF No. 1 at 1. Defendant has taken no action since that date, not even to put Plaintiffs on the waitlist. *Id.* Plaintiffs ask the Court for an order directing Defendant to process their petitions and make a waitlist determination. *Id.* Plaintiffs bring these claims under the Administrative Procedure Act (APA) (Count I) and the Mandamus Act (Count II).

## DISCUSSION

Plaintiffs' claims rest on allegations that Defendant has unreasonably delayed processing their U visa petitions and making the required waitlist determinations. Defendant moves to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure Rule 12(b)(1), arguing that the Court does not have subject-matter jurisdiction over these

claims because the pace at which USCIS processes a U visa petition is a discretionary decision shielded from judicial review by statute. Alternatively, Defendant moves to dismiss Plaintiffs' claims under Rule 12(b)(6), arguing that the Court must dismiss the Complaint because Plaintiffs have not alleged facts that support their allegations that USCIS has unreasonably delayed processing their U visa petitions.

## I. Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). "[T]he party invoking federal jurisdiction," generally the plaintiff, "bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Rule 12(b)(1) allows defendants to raise the defense of the court's "lack of subject-matter jurisdiction" by motion. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) motions to dismiss "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States,* 531 U.S. 425, 437 (2001).

### A. APA Claim

Plaintiffs seek relief under the APA, which provides that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The reviewing court's authority under the APA applies generally to agency action "except to the extent that . . . (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Id.* § 701(a)(1)–(2). Defendant argues that both (1) and (2) preclude judicial review of Plaintiffs' claims and strip the Court of subject-matter jurisdiction over this case. As to (1), the statute that precludes judicial review, Defendant asserts that the Immigration and Nationality Act (INA) contains a jurisdiction-stripping provision that applies to this case. As to (2), the action committed to agency discretion by law, Defendant asserts that the INA commits the pace of adjudication of U visas to agency discretion.

### 1. INA Statutory Language

Defendant asserts that a statute, 8 U.S.C. § 1252(a)(2)(B)(ii), precludes judicial review of Plaintiffs' claims, *see* § 701(a)(1); and therefore the Court does not have subject-matter jurisdiction in this case. In context, the statute reads:

> § 1252. *Judicial review of orders of removal*.
>    (a) Applicable provisions
>        . . .
>        (2) Matters not subject to judicial review
>        . . .
>            (B) *Denials of discretionary relief*
>            Notwithstanding any other provision of law . . . no court
>            shall have jurisdiction to review
>                (i) any judgment regarding the granting of relief
>                    under [certain statutes that provide the

> Executive with discretion to grant or deny various forms of relief from removal],[2] or
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum].

8 U.S.C. § 1252 (emphasis added). A simple textual review of the statute, read in context, strongly suggests that § 1252(a)(2)(B)(ii) refers to judicial review of orders of removal.[3] Courts do not have jurisdiction to review the types of orders of removal and collateral issues outlined in § 1252. Plaintiffs' claims in this case have nothing to do with any order of removal, or any of the collateral issued outlined in the statute, but rather focus on the agency's lack of action on their U visa petitions. Therefore, the Court finds that the plain text of § 1252 does not independently preclude review of Plaintiffs' claims.

Defendant also argues that a separate statutory provision, 8 U.S.C. § 1184, grants the Attorney General (AG) unfettered discretion in U visa cases and therefore, in the context of § 1252, judicial review is precluded. The statute reads:

§ 1184. Admission of nonimmigrants[4]

---

[2] *See Kucana v. Holder*, 558 U.S. 233, 247–48 (2010) (elaborating on the statutes listed in § 1252(a)(2)(B)(i)).

[3] The Court is mindful of the Tenth Circuit's guidance when looking at statute titles and headings. *See Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir. 1999) ("We have indicated that the title of a statute may imply a limitation on a statute's applicability. . . . [W]e see that [§ 1252] addresses a multitude of jurisdictional issues, including ones that are collateral to the review of a final order of deportation."). Here, the Court simply begins its analysis with a look at the context of § 1252 as a whole and does not rely solely on the section headings or titles to draw its conclusions. *See also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 14 F.4th 462, 476 (6th Cir. 2021) (reviewing § 1252 in context and elaborating on how the court came to the "understanding that § 1252 governs judicial review of decisions involving only orders of removal.").

[4] The INA divides noncitizens into two types of people: immigrants and nonimmigrants. Immigrants are noncitizens who intend to live in the United States permanently. *See* 8 U.S.C. § 1184(b). Nonimmigrants are noncitizens who are in the United States on a temporary basis, such as those in the United States on a tourist or student visa. *See* 8 U.S.C. § 1101(a)(15). U visas are also in the nonimmigrant category. *Id.* § 1101(a)(15)(U). *See also* Dep't of Homeland Sec., Nonimmigrant Classes of Admission (2017),

5

> (a) Regulations
> (1) The admission to the United States of any [noncitizen] as a nonimmigrant [including U visa petitioners] shall be for such time and under such conditions as the Attorney General may *by regulations prescribe* . . . .

*Id.* (emphasis added). The paragraph goes on to discuss the AG's authority to regulate bond requirements and outline a few specific categories of nonimmigrants that are beyond the scope of the AG's authority. *See id.* Clearly, § 1184 does apply to U visas because they are "nonimmigrant" visas. However, here again, a textual review of the statute does not support Defendant's position. The language does not give the AG "discretion"; rather, it states that the AG *may prescribe regulations* to govern the admission of U visa applicants. The word "discretion" is found nowhere in the text of § 1184(a). The authority to prescribe regulations is simply not synonymous with "discretion." After all, regulations have the force and effect of law. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001). The authority to promulgate regulations, which have the binding effect of law, is inherently distinct from a grant of discretion.[5] Thus, the

---

https://www.dhs.gov/ immigration-statistics/nonimmigrant/NonimmigrantCOA ("Nonimmigrants are foreign nationals admitted temporarily to the United States within classes of admission that are defined in [8 U.S.C. § 1101(a)(15)].")

[5] *See, e.g.*, 8 U.S.C. § 1252(a)(2)(B)(i). Courts do not have jurisdiction to review "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." *Id.* For each section enumerated in § 1252(a)(2)(B)(i), Congress *explicitly* gave the AG "discretion" over various decisions. *See* § 1182(h) ("The Attorney General may, in his *discretion*, waive the application . . . ."); §1182(i) ("The Attorney General may, in the *discretion* of the Attorney General, waive the application . . . ."); § 1229b(a) ("The Attorney General *may* cancel removal . . . if [the noncitizen meets certain requirement]. . . (b)(2)(D) The determination of what evidence is credible and the weight to be given that evidence shall be within the sole *discretion* of the Attorney General."); § 1229c(a) ("The Attorney General *may permit* [voluntary departure] . . . (2)(B) . . . the Attorney General *may*, in the *discretion* of the Attorney General for humanitarian purposes, waive application of subparagraph (A) . . . ."), and § 1255(a) (noting the status of an alien "may be adjusted by the Attorney General, in his *discretion* . . . ."). By contrast, § 1184(a) simply gives the AG authority to prescribe regulations. *See Nken v. Holder*, 556 U.S. 418, 430 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks omitted). *See also Kucana v. Holder*, 558 U.S. 233, 243 n.10 (2010)

Court does not find that § 1184(a) operates to preclude judicial review in the context of § 1252(a)(2)(B)(ii). Nor does § 1184(a) grant the AG inherent discretion over the pace of U visa adjudications such that § 701(a)(2) precludes judicial review.

### 2. Caselaw Examining the INA Statutory Language

The caselaw also supports this conclusion. *See, e.g., Kucana v. Holder*, 558 U.S. 233 (2010). In *Kucana*, the Supreme Court examined the language of § 1252(a)(2)(B)(ii) and found that the statutory language "any other decision or action of the Attorney General . . . *the authority for which is specified under this subchapter* to be in the discretion of the Attorney General" indicates that "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." *Id.* at 247 (emphasis added). The Supreme Court found that the omission of the word "regulation" in § 1252(a)(2)(B)(ii) showed that Congress did not intend to extend the jurisdictional bar to "decisions specified as discretionary by regulation along with those made discretionary by statute." *Id.* at 248. As explained in *Kucana*, if there is no statutory authority that plainly states that a decision is discretionary, the decision is not shielded from judicial review by § 1252(a)(2)(B)(ii). *Id.*; *see also Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011) (recognizing that *Kucana* abrogated the Tenth Circuit's ruling in *Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir. 2004), that decisions made discretionary by regulation came within the statutory bar)).

---

("[T]he statutory proscription Congress enacted, § 1252(a)(2)(B)(ii), speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion. 'Specified' is not synonymous with 'implied' or 'anticipated.'").

The Court agrees with Judge Gonzales's recent ruling applying *Kucana* to a nearly identical case. *See Bustos v. Mayorkas*, Civ. No. 20-1348 KG/SMV, 2021 WL 3931173. (D.N.M. Sept. 2, 2021). The statute does not address the pace at which USCIS must adjudicate U visa petitions. Without a specific statutory delegation to the Attorney General of discretionary authority to establish a timetable, USCIS's regulatory decisions about the pace are not statutorily excluded from judicial review.[6] The Court concludes that the INA does not prohibit this Court's review of Plaintiffs' claim that USCIS has unreasonably delayed adjudicating their U visa applications.

### 3. Caselaw Examining APA Reviewability of Similar Claims

Plaintiffs argue that the APA requires agencies to conclude matters "within a reasonable time." 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."). When a plaintiff premises a claim on a "failure to act," a district court can review that claim only "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 63–64 (2004) (emphasis in original) (explaining

---

[6] Defendant urges the Court to construe § 1252 more broadly, and cites to *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009), to support its argument. ECF No. 9 at 10. However, in *Herrera-Castillo*, the Tenth Circuit examined the statutory language in the context of a petition for review challenging a *decision* of the Board of Immigration Appeals. *Id.* at 1005–06. Thus, the claims in that case are fundamentally different from Plaintiffs' claims here. Moreover, the Tenth Circuit relied on *Yerkovich*, which was abrogated by the Supreme Court's ruling in *Kucana*. Therefore, the Court does not find *Herrera-Castillo* instructive to the present case.

Similarly, Defendant urges the Court to construe § 1184 more broadly and cites *CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 619 (6th Cir. 2002) and *Buddhi v. Holder*, 344 F. App'x 280, 284 (7th Cir. 2009). ECF No. 9 at 11. However, here again, the cases do not speak to the Court's jurisdiction to review unreasonable delay of U visa waitlist adjudications. In both cases, appellate courts found they lacked jurisdiction to review the agency *decision* to deny the plaintiffs' request for a visa extension. 278 F.3d at 617; 344 F. App'x at 284. Therefore, the Court does not find either case instructive to the present issues.

that a "failure to act" is limited to a "discrete action" or an "omission of an action without formally rejecting a request"); see also *Utah Native Plant Soc'y v. United States Forest Serv.*, 923 F.3d 860, 874 (10th Cir. 2019) (same). Required agency actions are those demanded by law and are reviewable if the "agency action [is] unlawfully withheld or unreasonably delayed." § 706(1). Thus, to prove that a claim is reviewable under the APA, a plaintiff must show (1) a legally required duty to act, and (2) that the agency unreasonably delayed acting on that duty, or unlawfully withheld action. *Id.*; *SUWA*, 542 U.S. at 63.

The Tenth Circuit has examined the difference between the terms "unlawfully withheld" and "unreasonably delayed" in the text of § 706(1). *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1189–91 (10th Cir. 1999). It found that the difference between the two phrases depended on whether there was a statutory deadline. An action is unlawfully withheld when a statute sets a specific deadline for the agency to act. *Id.* at 1190. An action is "unreasonably delayed" when there is only a statutory admonition to act "within an expeditious, prompt, or reasonable time." *Id.* In the latter case, "§ 706 leaves in the courts the discretion to decide whether agency delay is unreasonable." *Id.*; see also *Telecomm. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("[S]ection 706(1) coupled with [§] 555(b) does indicate a congressional view that agencies should act within reasonable time frames and that courts designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed.").

Relevant here, the APA requires USCIS to conclude matters presented to it within a "reasonable time." § 555(b). Neither the INA nor the APA define "reasonable time," nor

9

do they set a firm deadline for adjudicating U visa petitions. *See Forest Guardians*, 174 F.3d at 1190. Additionally, nothing in either statute exempts USCIS from the reasonable time requirement in § 555 when processing U visa petitions. Therefore, the Court finds that § 706(1) permits it to examine whether the pace of the required decision making has been unreasonably delayed.

Multiple circuit courts have come to similar conclusions. The Fourth Circuit has found that a federal court may consider whether USCIS has unreasonably delayed processing U visa petitions. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (4th Cir. 2021) ("These claims are reviewable.").[7] Very recently, the Sixth Circuit also found that the INA did "not block [the court's] review of [the plaintiffs'] claim that the DHS Secretary has unreasonably delayed the principal petitioners' placement on the U-visa waitlist." *Barrios Garcia v. U.S. Dep't of Homeland Security*, 14 F.4th 462, 475 (6th Cir. 2021).[8] Moreover, the Seventh Circuit assumed it had subject-matter jurisdiction to hear similar claims. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 276 (7th Cir. 2017) (tacitly finding subject-matter jurisdiction by acknowledging that USCIS has a duty to process U visas within a reasonable time but finding that a one-and-a-half-year wait was not unreasonable).[9] Here, the Court is persuaded by the weight of authority from other circuit courts; the Court has subject-matter jurisdiction to review Plaintiffs' claims under the APA.

---

[7] Defendant points out that whether the court had jurisdiction to hear the unreasonable delay claim was not addressed in the briefing before the Fourth Circuit. ECF No. 9 at 13 n.12. The Court nevertheless finds the Fourth Circuit's brief assessment in its footnote persuasive, especially given the more recent Sixth Circuit opinion arriving at the same conclusion.

[8] The Court finds the Sixth Circuit's thorough analysis of § 1252(a)(2)(B)(ii) particularly persuasive.

[9] Only the Fifth Circuit has reached the opposite conclusion in a similar context, but the decision was later vacated. *Bian v. Clinton*, 605 F.3d 249, 253–55 (5th Cir. 2010) (finding that it was without subject-matter jurisdiction under the INA, the APA, or the Mandamus Act to review the pace of the

### B. Mandamus Claim

Defendant argues that if the Court finds that the INA precludes review under the APA, then the Court should also find that the INA precludes mandamus relief. Defendant makes no other argument about why the Court lacks jurisdiction over a claim brought under 28 U.S.C. § 1361, which states that district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Because the Court does not find that the INA precludes review under the APA, the Court does not find that the INA precludes mandamus relief.

### II. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading

---

adjudication of an 1-485 application because without a timeframe, "how" USCIS chose to adjudicate a petition was discretionary), *vacated as moot*, 2010 WL 3633770 (5th Cir. Sept. 16, 2010). The Court emphasizes that the Fifth Circuit's decision considered the question in the context of a completely different immigration application (not U visa petitions), and the decision was later vacated. Thus, the Court does not find the Fifth Circuit's decision persuasive here.

District courts have divided on this matter. *Compare M.J.L. v. McAleenan*, 420 F. Supp. 3d 588 (W. D. Tex. 2019) ("[T]he Court finds that the USCIS has a nondiscretionary duty to adjudicate U Visas within a reasonable time, and therefore the Court has jurisdiction under the APA to review [the plaintiffs'] APA claim that the USCIS failed to adjudicate [the plaintiffs'] U Visas within a reasonable time."), *with Canevaro v. Wolf*, 2021 WL 2283870, at *4 (N.D. Ga. May 20, 2021) ("The Court lacks subject-matter jurisdiction over plaintiffs' waitlist claim because they have not alleged a failure to take a non-discretionary action."). One of Defendant's notices of supplemental authority, ECF No. 20, proffers additional district court cases that support Defendant's arguments. There are equally as many cases finding otherwise. *See Mondragon Tinoco v. Mayorkas*, No. 1:20-cv-4787, 2021 WL 3603373, at *4–6 (N.D. Ga. Aug. 13, 2021) (discussing authority finding that district courts have subject-matter jurisdiction and collecting cases). Given the Tenth Circuit's guidance in *Forrest Guardians* and the weight of authority from other circuit courts, the Court will not consider these cases further.

11

standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

### A. APA Claim

Defendant argues that Plaintiffs "have not plausibly alleged that the processing times are unreasonable under the APA." ECF No. 9 at 2. To support this argument, Defendant urges the Court to weigh six factors that courts commonly use to examine the reasonableness of an agency's actions. *Id.* at 15–16 (quoting *Telecomm. Rsch. & Action Ctr.*, 750 F.2d at 80). These factors, known as the *TRAC* factors, ask a court to evaluate the following:

> 1) the time agencies take to make decisions must be governed by a rule of reason;
>
> 2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> 3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> 4) the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> 5) the nature and extent of the interests prejudiced by delay; and
>
> 6) the court need not find any impropriety behind agency lassitude to hold that agency action is unreasonably delayed.

*Telecomm. Rsch. & Action Ctr.*, 750 F.2d at 80 (cleaned up). Defendant argues that each of these factors weigh in favor of its Motion. Plaintiffs disagree.

The Court agrees with Defendant that the *TRAC* factors provide helpful guidance in assessing claims of agency delay. However, it is too early in the proceedings for them to be of use here. Most of the *TRAC* factors require a court to go beyond the allegations in the Complaint and make factual findings about matters outside of the pleadings. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003); *see also Gonzalez*, 985 F.3d at 375 (finding that the TRAC factors were not helpful at the motion to dismiss stage because "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage.").

Here, Plaintiffs have sufficiently alleged that they are eligible for U visas and properly filed their petitions. ECF No. 1 at 1, 9–12. They have also alleged that USCIS has taken more than four years[10] to process their U visa petitions to make the required, nondiscretionary waitlist determination. *Id.* Moreover, Plaintiffs have pled sufficient facts to show that their interests are weighty, implicate health and welfare, and are harmed by

---

[10] Plaintiffs' Complaint alleges that it has been over 48 months. ECF No. 1 at 2, ¶ 3. This was at the time of filing the Complaint on May 25, 2021. It has been an additional 7 months since the Complaint was filed, and presumably Plaintiffs have yet to receive a waitlist determination.

Moreover, the Court agrees with the Sixth Circuit's assessment of Defendant's argument regarding the reasonableness of current estimated wait times. *See Barrios Garcia*, 14 F.4th at 488 ("The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiffs' case; this number also does not alter how most (if not all) U-visa adjudications might be unreasonably delayed. We find it unhelpful to fixate on the average snail's pace when comparing snails against snails in a snails' race.").

the long wait. *See id.* at 12. If Plaintiffs are put on the waitlist, they receive certain benefits, namely deferred action or parole and the possibility of employment authorization. *See* 8 C.F.R. § 214.14(d)(2). Plaintiffs allege that the unreasonable delay has harmed them by depriving them of deferred action and the ability to remain in the United States without fear. ECF No. 1 at 12. They also allege that the delay has deprived them of the possibility of employment authorization that would come with work opportunities, health insurance, and access to therapy that both Plaintiffs need due to the domestic violence they suffered. *Id.* Defendant may be able to refute these contentions later in the proceedings, but at this stage the Court may review only Plaintiffs' pleadings.[11]

Finally, Defendant argues that its new policy, published on June 14, 2021, and known as the Bona Fide Determination (BFD) process, changes its approach to processing U visas and offers the possibility of an alternate, quicker route to deferred action and employment authorization (instead of the full waitlist adjudication). ECF No. 9

---

[11] Defendant repeatedly emphasizes that Plaintiffs' claims effectively ask the Court to allow them to cut in line, *see* ECF No. 9 at 2–3, 16–17, 19, 21–22. Defendant cites *Mashpee* and various district court cases to support its argument. The Court does not find Defendant's argument persuasive. First, as stated above, there is not a consensus among district courts on how to decide these types of claims. Therefore, the Court is not persuaded by the district court cases that Defendant has found to support its argument when plenty of others disagree. Second, the *Mashpee* decision is only mildly helpful to the issues here. In *Mashpee*, the D.C. Circuit was asked to revisit a district court ruling granting the plaintiff *summary judgment* against an agency for unreasonable delay. 336 F.3d at 425–26. Because the issue before the court was at the summary judgment stage, the court was free to consider additional facts and evidence before it. *See id.* at 427–30. Here, the Court is considering a motion to dismiss, which is a completely different standard than summary judgment. Moreover, the agency involved and the alleged harm were starkly different from what is involved here.

Finally, and most importantly, if the Court were to agree with Defendant and find that Plaintiffs failed to state a claim because they effectively asked to jump in line, the Court's ruling would effectively gut the APA. Congress clearly intended to provide judicial review of unreasonably delayed agency action. The statute provides that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Thus, the Court will not construe Plaintiffs' Complaint to be a request to cut in line and find that Plaintiffs have failed to state a claim. Here, Plaintiffs have adequately alleged unreasonable delay that is reviewable under the APA.

at 8. To the extent that Defendant urges the Court to find that this new policy is evidence that Plaintiffs have failed to state a claim, as a matter of law, the new BFD policy does not change Plaintiffs' allegations that there has been an unreasonable delay. To be sure, the existence of a new policy is an important fact to consider, but at the motion to dismiss stage, it does not establish that Plaintiffs have failed to state a claim of unreasonable delay.[12] Plaintiffs' allegations have raised their right to relief above a speculative level and so the Court will deny Defendant's motion to dismiss Plaintiffs' APA claim in Count I.

### B. Mandamus Claim

Defendant also asks the Court to dismiss Plaintiffs' Count II claim for relief pursuant to the Mandamus Act. As codified in 28 U.S.C. § 1361, district courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus is a drastic remedy "to be invoked only in extraordinary situations" and is not available when review by other means is possible. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976). "To be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question

---

[12] Similarly, one of Defendant's Notices of Supplemental Authority, ECF No. 17, informs the Court of a new Immigration and Customs Enforcement (ICE) Directive. The Directive states that "absent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits." ECF No. 17-1 at 2. Defendant claims this Directive is relevant to Plaintiffs' argument that "a waiting list decision is necessary to protect the interests of the Plaintiffs and their U.S. citizen children" because "[w]ith an outstanding removal order, Plaintiff can be detained and placed in detention, without the right to be released." ECF No. 17 at 2 (quoting ECF No. 13 at 19). The Court appreciates being informed of the new Directive. However, the Directive does not, as a matter of law, establish that Plaintiffs have failed to state a claim.

is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar,* 398 F.3d 1201, 1206 (10th Cir. 2005) (citation omitted).

Plaintiffs have alleged sufficient facts to show that they meet prongs (1) and (2) of the test. The question remaining before the Court is whether mandamus relief is Plaintiffs' only adequate remedy. The APA permits Plaintiffs to seek redress for agency action "unreasonably delayed." *See* § 706(1). If a reviewing court finds in Plaintiffs' favor, the court "shall compel agency action." *See id.* In this manner, § 706(1) incorporates the mandamus remedy into the APA. *See SUWA,* 542 U.S. at 66. "The two statutes [APA and Mandamus] are, after all, merely different means of compelling an agency to take action which by law it is required to take." *Hernandez-Avalos v. INS,* 50 F.3d 842, 844 (10th Cir. 1995) (internal quotations and citations omitted). The statutory remedy provided by § 706(1) is an adequate remedy available to Plaintiffs that precludes mandamus relief. *Mt. Emmons Min. Co. v. Babbitt,* 117 F.3d 1167, 1170 (10th Cir. 1997) ("The availability of a remedy under the APA technically precludes [the plaintiff's] alternative request for a writ of mandamus[.]"). Therefore, the Court will dismiss Count II.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss and Memorandum in Support, ECF No. 9, is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion to Dismiss Count I, Plaintiffs' claim under the APA, is **DENIED**. Defendant's Motion to Dismiss Count II, Plaintiffs' claim for mandamus relief, is **GRANTED**.

**IT IS SO ORDERED.**

_Margaret Strickland_
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE